UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY ORMSBY, as mother and next friend of
W.O., a minor child,

        Plaintiff,

    v.                            Case No. 12-cv-14091
                                       Honorable Julian Abele Cook, Jr.

LTF FITNESS OPERATIONS COMPANY, INC.,

        Defendant.

## ORDER

      The Plaintiff, Nancy Ormsby, filed this premises liability action on behalf of her minor child, "W.O.", against the Defendant, Life Time Fitness Club Operations Company, Inc. In her complaint, she alleges that her son was injured after he slipped and fell on a wet floor mat in the child care center at one of the Defendant's facilities.

      This action, originally filed in the Circuit Court for the County of Wayne (Michigan), was removed by the Defendant to this Court on September 14, 2012 on the basis of its diversity jurisdiction. 28 U.S.C. § 1332. In her complaint, the Plaintiff asserts her right to relief under a variety of legal claims; namely: (1) premises liability, (2) negligence, (3) gross negligence, (4) nuisance, and (5) attractive nuisance. Currently before the Court are cross motions for summary judgment[1] and three related motions by the Plaintiff who seeks to strike the Defendant's motion and advance this matter to trial. (ECF Nos. 45, 31, and 76, respectively).

---

[1] The Plaintiff seeks "summary judgment on liability" (ECF No. 28), and the Defendant requests the entry of a partial summary judgment on the basis of the Plaintiff's negligence, gross negligence, and nuisance claims. (ECF No. 33).

## I.

On June 10, 2011, Nancy Ormsby dropped her two sons off at the child care center located inside the Defendant's facility in Canton, Michigan. A former employee of the Defendant, Stephanie Hess, was the designated supervisor on June 10th who had been assigned to the duties at the front desk. According to Hess, Ormsby's son, W.O., entered the Defendant's facilities, and immediately ran down the hall and into an area known as the "maze room."[2] (Def.'s Mot. Summ. J., Ex. A, Hess Dep. 28:20, July 24, 2013, ECF No. 33-2). However, she asserts that this "maze room" was closed to the general public because its floor had been recently mopped. As such, the lights therein had been turned off but the entry was not barricaded.[3] (*Id.* at 31:9, 28:1).

Hess reportedly pursued W.O. down the hallway but was unable to reach him before he entered the maze room. Once there, she found the youngster on the floor crying. (*Id.* at 28:9, 29:1). There were no witnesses to the fall. After examining him and discovering no marks on his body, Hess picked W.O. up and handed him over to Angela Lee, another employee of the Defendant, to ice his injured leg. (*See Id.* at 29:16).

According to Ormsby - approximately 20 minutes into her yoga class - she was notified that W.O. had been injured. (*See* Def.'s Mot. Summ. J., Ex. B, Ormsby Dep. 14:10, June 20, 2013, ECF No. 33-3). Hess maintains that any delay in contacting the Plaintiff was attributable to a note within

---

[2] The "maze room" is equipped with a play scape structure which, in essence, is "a giant tube system where [kids] can play." (Hess Dep. 13:18-19).

[3] There is some disagreement between the parties over the standard practice that had been employed by the Defendant to indicate the closure of a room to the general public within the facility. Ormsby maintains it was the normal practice of the Defendant to use a folded gym mat in an upright position on its side in order to block a room from being accessed. However, Hess testified that (1) a closed area was denoted by turning the lights off in a given room, and (2) the affected children were put on notice of this procedure. (Hess Dep. 32:16-22).

2

W.O.'s file which instructs every child care employee to wait 30 minutes before attempting to reach out. (*See* Hess Dep. 35:19). Indeed, Ormsby admitted that she had requested the Defendant to insert this note in W.O.'s file following an earlier experience in which she had been previously contacted by staff within approximately 15 minutes following a crying episode involving W.O. (Ormsby Dep. 11:2, 12:8). The reason for this instruction, according to Ormsby, was because she felt that the Defendant's staff should "try other avenues of [consoling W.O.]" first. (Ormsby Dep.12:8).

Shortly after retrieving W.O., Ormsby took him to an urgent care facility where she was informed by medical personnel that the youngster had suffered a spiral fracture of the tibia. (*Id.* at 19:17, 22:1). On June 13, 2011, W.O.'s leg was placed in a cast by an orthopedic physician. (*Id.* at 24:12). Although the initial prognosis was that W.O.'s leg would take approximately four to eight weeks to heal, it was ultimately determined that it would be more appropriate to remove the cast from W.O.'s leg approximately three weeks after it had been set. (*Id.* at 32:11). As of August 2011, Ormbsy opined that W.O. (1) had full range of motion in his extremities without any problems walking, (2) had not been placed on any restrictions or recommended for further surgery by his doctors, and (3) had not complained of any pain in the impacted area. (*Id.* at 40:22, 51:20, 57:12). Ormsby continued to use the Defendant's child care center facilities following W.O.'s injury until April 24, 2012 when she cancelled her membership. (*Id.* at 45:4, 47:22).

According to Ormsby, W.O. had sustained "severe and permanent injuries that include, but are not limited to, a fractured left tibia in two locations, physical pain and suffering, shock, fright, [and] psychological [and] emotional [distress]." (Compl. ¶ 12, ECF No.1). While the complaint initially contained five counts, namely: (1) premises liability, (2) negligence, (3) gross negligence, (4) nuisance, and (5) attractive nuisance, Ormsby has since informed the Court that she is no longer

pursuing W.O.'s negligence and nuisance claims. (Plf's Resp. 8, ECF No. 41). Those claims are therefore dismissed.

However, with respect to Ormsby's claim for premises liability, the Defendant admits that it "breached a duty it owed on the premises that caused W.O.'s broken leg." (Def's Resp. 1, ECF No. 61).[4] Accordingly, the Court grants the entry of summary judgment as it relates to Life Time's liability for W.O.'s broken leg. All other alleged damages stemming from W.O's fall - none of which are currently before the Court - remain a contested component of this case. This order is therefore limited to Ormsby's gross negligence and attractive nuisance claims.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be

---

[4] Worthy of note, Life Time expressly denies that "this slip-and-fall accident was the proximate cause of Plaintiff's other claimed injuries." (Def's Resp. Mot. Strike 4, ECF No. 56).

drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In assessing cross-motions for summary judgment, each movant must individually fulfill the requirements articulated in Rule 56. The court is not required to grant summary judgment as a matter of law for either side. Rather, the court must evaluate each motion on its merits. *Delta Research Corp. v. EMS, Inc.,* 04-60046, 2005 WL 1981775 (E.D. Mich. Aug. 16, 2005).

III.

Ormsby maintains that the Defendant was grossly negligent when it failed to (1) barricade

5

the "maze room," and (2) contact her within a reasonable amount of time following W.O.'s injury. In response, the Defendant argues that where, as here, the underlying action is based on a condition of the land, the exclusive cause of action is in premises liability. In the alternative, it maintains that the conduct of its employees falls far short of the type and degree of recklessness required to sustain a claim for gross negligence.

In Michigan, "[p]remises liability is a specific type of negligence claim based on an injury that arises out of a condition on the property as opposed to an injury arising out of the activity or conduct that created the condition." *Hollerbach v. Target Corp.*, 443 Fed. Appx. 936, 937 (6th Cir. 2011) (citing *James v. Alberts,* 464 Mich. 12, 18–19, 626 N.W.2d 158 (Mich. 2001)). Indeed, "although premises liability and negligence claims share the same legal elements, they are distinguishable based on the pleadings." *Curtis v. Target Corp.*, 12-11199, 2013 WL 5476298, *3 (E.D. Mich. Oct. 1, 2013). Thus, if the harm alleged by the plaintiff flows solely from a condition of the land, the claim falls exclusively under premises liability. *James,* 626 N.W. 2d at 162. If, on the other hand, "the plaintiff alleges harm caused by the *conduct of a landowner* unrelated to the land, the action is more properly characterized as ordinary negligence." *Curtis,* 2013 WL 5476298 at *3 (emphasis supplied) (citing *Kessler v. Visteon*, 448 F.3d 326, 331 (6th Cir. 2006)).

Here, there is no question that, when addressing Ormsby's argument that the Defendant was grossly negligent for failing to barricade the "maze room," the harm was clearly related to a condition of the land; namely, a wet floor. As such, this component of W.O's claim sounds solely in premises liability, and is therefore dismissed. With respect to the Defendant's failure to notify Ormsby of W.O.'s injury in a timely manner, however, the alleged harm (i.e., unnecessary pain and suffering) is unrelated to a condition of the land.

Gross negligence "has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver v. Smith*, 290 Mich.App 678, 685, 810 N.W.2d 57 (Mich. Ct. App. 2010). An actor is grossly negligent when an objective observer could conclude that "the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v. Crabtree*, 263 Mich.App 80, 90, 687 N.W.2d 333 (Mich. Ct. App. 2004). Indeed, the Michigan Supreme Court has specifically held that "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v. Rozwood*, 461 Mich. 109, 122-23, 597 N.W.2d 817 (Mich. 1999). Rather, to establish gross negligence the evidence must demonstrate that "the contested conduct was substantially more than negligent." *Costa v. Community Emergency Med Servs, Inc,* 475 Mich. 403, 411, 716 N.W.2d 236 (Mich. 2006).

While failing to provide any supporting authority, the essence of Ormsby's argument appears to be that the Defendant's decision to wait 20 minutes before notifying her of W.O.'s injury somehow exacerbated his condition. Even assuming, *arguendo*, the truth of this naked assertion, the question is whether the Defendant's "delay" rises to the level of recklessness necessary to support a claim of gross negligence under Michigan law.

In *Oostdyk ex rel. Budd v. Caledonia Cmty. Sch.*, 2014 WL 588063 (Mich. Ct. App. Feb. 13, 2014) the court addressed a very similar issue. There, the plaintiff, a special needs student, suffered a seizure while being transported to school. *Id.* at *1. After stopping the bus to assess the situation, the driver determined that the plaintiff, while nonresponsive, was still breathing, and opted to resume the drive to school. *Id.* At some point during the two minute drive, the plaintiff's position shifted and his airway became blocked. *Id.* As a result of approximately seven minutes without oxygen - the

7

time between the plaintiff's change in position and the arrival of emergency responders at the school

- the plaintiff suffered significant brain damage. *Id.*

The plaintiff filed suit alleging that the driver was grossly negligent for failing to keep the

bus stopped until emergency services arrived. *Id.* at *4. According to the court, however, the driver's

actions did not rise to an actionable level of gross negligence:

> It is clear from the evidence that [the defendant was] concerned about
> a possible injury because [he] examined [the plaintiff] to see if he
> was breathing. [He] . . . stopped the bus and examined [the plaintiff]
> as soon as he was alerted to the situation. He further stated that he did
> not think [the plaintiff] was in a dangerous position, that [the
> plaintiff] appeared to be breathing, and that [he] was not choking and
> there was no vomit. [The defendant] then decided to continue driving
> the bus to [school] where he believed help would be available to [the
> youngster].

*Id.* In other words, the record failed to support the notion that the driver's conduct was "so reckless

as to demonstrate a substantial lack of concern for whether an injury results." *Id.* (citing Mich.

Comp. Laws. 691.1407(7)(a)).

By contrast, in *Thompson v. Rochester Cmty. Scho.,* 2006 WL 3040137 (Mich. Ct. App. Oct.

26, 2006), the court declined to grant summary disposition where, following the plaintiff's collapse

in a high school cafeteria, the defendants failed to administer CPR and actively discouraged

bystanders from calling 911. *Id.* at *1-3. Moreover, once 911 was finally called—at least 14 minutes

after the incident occurred—the defendants were overheard laughing instead of listening to the

emergency responder's instructions. *Id.* at *4. In light of the plaintiff's passing, the court had little

trouble holding that "[t]he evidence . . . was sufficient to allow reasonable minds to conclude that

defendants 'willful[ly] disregard[ed] . . . precautions or measures to attend to safety' and

'singular[ly] disregard[ed] . . . substantial risks.'" *Id.* at *11.

8

The facts surrounding this case are much closer to *Oostdyk.* Indeed, the record reflects that Hess immediately followed W.O. as he ran to the "maze room" and, similar to the driver in *Oostdyk,* checked for any signs of trauma. Realizing that he had slipped on the wet floor mats, Hess picked up W.O. and handed him over to Angela Lee who treated his injured leg with an ice pack.  Once it was clear that W.O. was inconsolable, Hess escalated the situation to Ormsby's attention for further handling. At no point does the record reflect that Hess or Lee believed that W.O. had broken his leg. Moreover, there is nothing to suggest that W.O. was left alone for any period of time between his injury and Ormsby's arrival- which was estimated to be only 20 minutes in any case. Quite the contrary, the record indicates that W.O. was under constant supervision at all times following his injury. Finally, any perceived delay in contacting Ormsby was clearly attributable to her own instruction that the Defendant staff was to wait at least 30 minutes before contacting her if W.O. was crying. In sum, without evidence of a clear lack of concern for W.O.'s well-being, the record fails to support an actionable claim of gross negligence. The Defendant's motion for summary judgment is thus granted in this regard.

IV.

Finally, the Defendant argues that Ormsby's attractive nuisance claim must fail, where, as here, W.O. was an invitee on its premises at the time in question. In response, Ormsby maintains that the Michigan courts' interpretation of the attractive nuisance doctrine has evolved to include both trespassers and invitees. The question presented is thus a narrow one; namely, whether invitees are a protected class under Michigan's iteration of the attractive nuisance doctrine.[5]

---

[5] Neither party appears to dispute the fact that W.O. was an invitee on the Defendant's premises during the time that is relevant to this controversy.

9

Michigan has adopted the attractive nuisance doctrine as set forth in the second Restatement of Torts, 2d, § 339. *Pippin v. Atallah,* 245 Mich.App 136, 146, 626 N.W.2d 911 (Mich. Ct. App. 2001). As both parties correctly point out, the Michigan courts have not always been consistent in their treatment of child invitees under the doctrine. *Compare Conaty v. Piotrowicz*, 1996 WL 3334751, \*3 (Mich. Ct. App. Dec. 20, 1996) ("The doctrine of attractive nuisance appears to apply only with respect to known *trespassing* children on the landowner's property.") *and Royston v. City of Charlotte*, 278 Mich. 255, 259, 270 N.W. 288, 289 (Mich. 1936) ("Trespass is the basic requirement of an attractive nuisance.) *with Salib ex rel. Kahil v. Child's Lake Estates*, 2004 WL 2072063, \*3 (Mich. Ct. App. Sept. 16, 2004) ("Although the plain language of § 343 indicates that the doctrine only applies to child trespassers, we have held that child invitees fall within the category of children protected under the attractive nuisance doctrine.") *and Gilbert v. Sabin*, 76 Mich. App. 137, 143-44, 256 N.W.2d 54, 57-58 (Mich. Ct. App. 1977) ("We hold that if a child trespasser is within the protection of the rule, certainly a child licensee or invitee is similarly protected."). Notwithstanding *Conaty* and *Royston*, the Michigan court of appeals–in its most recent binding opinion on the matter–appears to have settled the debate by affirming the position taken in *Gilbert* and its progeny.[6]

Indeed, in *Bragan ex rel. Bragan v. Symanzik*, 263 Mich. App. 324, 330, 687 N.W.2d 881, 885 (Mich. Ct. App. 2004), the court, relying on § 343B of the Restatement, held that "landowners are liable to child licensees and invitees in *any* situation in which they would be liable to child

---

[6] Worthy of note, *Gilbert* explicitly declined to follow *Royston* - a 1936 Michigan Supreme Court decision - on the basis that "the Court in *Royston* did not hold that trespass was a basic requirement of an attractive nuisance . . . it merely held that no matter on what theory plaintiff's claim was grounded, it was barred by the doctrine of governmental immunity." *Gilbert*, 76 Mich. App. at 143. The Court agrees with *Gilbert's* reasoning.

10

trespassers." (emphasis added). As the commentary to § 343B provides, "[w]here the child is not upon the land as a trespasser, but is a licensee or an invitee, the possessor of the land is no less obligated to anticipate and take into account his propensities to inquire into or to meddle with conditions which he finds on the land . . . ." 2 Restatement Torts, 2d, § 343B, comment b. The logic underlying *Bragan*–and the quoted portion of the Restatement–appears to be sound. Indeed, the law often provides child invitees and licensees with greater protection than that which is afforded to trespassers. As such, there appears to be little reason why an otherwise protected class of children should be excluded from the purview of the attractive nuisance doctrine.

*Bragan* is significant here because, as mentioned, there is no debate that W.O. was an invitee on the Defendant's premises at the time of the incident. Accordingly, "he is entitled to at least as much" protection as a trespasser. *Id.* at comment c. Concluding that W.O. is covered under the attractive nuisance doctrine does not, however, imply that his claim can be disposed of at the summary judgment stage. In fact, the Court finds that neither party has adequately briefed the merits of this claim and must, therefore, deny both parties' motions in this regard.

V.

The Court now turns to Ormsby's requests seeking to (1) strike the Defendant's motion for partial summary judgment (ECF NO. 45), (2) advance this case for trial (ECF No. 31), and (3) rule on Plaintiff's motion for summary judgment and set trial for damages (ECF No. 76). With respect to Ormsby's first request, the Court is not convinced that the Defendant has failed to comply with E.D. Mich. L.R. 7.1. Indeed, it appears as though both parties regularly sought concurrence via email or facsimile before filing their respective motions. This practice, while arguably not the most direct

11

mode of communication, conforms with the spirit of L.R. 7.1. Accordingly, the Court denies Ormsby's motion to strike.

Finally, with respect to the motion to "advance case to trial", and "set trial for damages" Ormsby has failed to offer a compelling reason why the Court should deviate from its normal procedure of conducting a settlement conference prior to escalating this matter to trial. The Court thus denies both of Ormsby's motions.

VI.

Consistent with the foregoing, the Court (1) grants in part and denies in part Ormsby's motion for summary judgment (ECF No. 28), (2) grants in part and denies in part the Defendant's motion for partial summary judgment (ECF No. 33), (3) denies Ormsby's motion to strike (ECF No. 45), (4) denies Orsmby's motion to advance this matter to trial (ECF No. 31), and (5) denies Orsmby's motion to rule on Plaintiff's motion for summary judgment and set trial for damages. (ECF No. 76).[7]

IT IS SO ORDERED.


Date: August 18, 2014                          s/Julian Abele Cook, Jr.
                                               JULIAN ABELE COOK, JR.

                                               U.S. District Judge

---

[7] The Court notes that the Plaintiff, in her reply brief, expressed a desire to "withdraw any acquiescence to Plaintiffs [sic] prior statement that Plaintiffs [sic] would withdraw its count for negligence . . . ." (Plf's Reply 1, ECF No. 78). Notwithstanding the Plaintiff's failure to provide any authority in support of this request, the Court declines to consider the merits of an argument raised for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.")

12

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 18, 2014.


<u>s/ Kay Doaks</u>

Case Manager